

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 2 2 2020

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| PETE GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:18-CV-95-Z-BR |
| | § | |
| CITY OF AMARILLO, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before this Court is "Defendant's Motion for Summary Judgment" ("Motion for Summary Judgment") filed by Defendant City of Amarillo, Texas ("Defendant"), on November 11, 2019. In the motion, Defendant moves for summary judgment on all claims against it made by Plaintiff Pete Garcia ("Plaintiff").[1] For the reasons stated below, the Court GRANTS Defendant's Motion for Summary Judgment in its entirety.

### I. BACKGROUND

The facts of this case are lengthy and have been comprehensively recited at multiple points in multiple filings. *See* ECF Nos. 65 at 6–11, 69 at 6–11. The Court therefore declines to repeat them in their entirety and instead will simply cite to the record when appropriate. Nevertheless, these facts can be briefly summarized as follows.

Plaintiff was employed by Defendant as a firefighter and suffered an ear injury in an on-the-job accident involving an air horn. Defendant placed Plaintiff on leave with full pay for 24 weeks while he recovered from his injury. During this period, Plaintiff submitted grievances to

---

[1] Plaintiff has filed multiple complaints in this case. *See* ECF Nos. 1, 26, 60. Defendant moves for summary judgment on all claims appearing in Plaintiff's most recent amended complaint (ECF No. 60).

Defendant against co-employees that he believed were responsible for the injury and acquired an attorney. Plaintiff then returned to light-work duty about six months after his injury and was required to sign a document indicating the receipt of new work-related policies issued during his leave of absence. Plaintiff expressed discomfort in signing the document without first consulting his attorney and did not sign it. Consequently, he was placed back on leave with pay and given the document and an accompanying packet containing the policies to review and sign. He also was instructed not to train at any of the fire stations at his work. Plaintiff returned to one of the stations to access his email on its computer system, and an argument between him and the district chief at the station ensued. Plaintiff eventually left the station and later met with a different district chief to discuss what had happened at the station. Two days later, Plaintiff failed to appear at the city hall as directed to discuss his purportedly insubordinate behavior. He was indefinitely suspended the next day, which is tantamount to termination.

On April 25, 2018, Plaintiff filed a complaint against Defendant in the District Court of Potter County, Texas, 320th Judicial District (ECF No. 1-6) for unlawful discrimination under Texas Labor Code Section 21.051 and failure to comply with the Family and Medical Leave Act. On May 15, Defendant removed the case to this Court (ECF No. 1) and filed an answer to Plaintiff's complaint (ECF No. 2).

On the same date, Defendant filed a motion to dismiss (ECF No. 3). On June 14, Plaintiff filed a response to Defendant's motion to dismiss (ECF No. 11), to which Defendant replied on June 28 (ECF No. 14). On October 29, the United States Magistrate Judge entered findings and conclusion regarding Defendant's motion to dismiss and recommended that it be denied without prejudice (ECF No. 27). On November 30, the Court adopted the Magistrate Judge's findings, conclusions, and recommendation (ECF No. 29).

On October 4 of the same year, Plaintiff filed an amended complaint against Defendant (ECF No. 26). On October 3, 2019 — almost a year later — Plaintiff filed a second amended complaint against Defendant (ECF No. 60) for the same causes of action as in his initial complaint as well as for retaliation under Title VII of the Civil Rights Act of 1964 and injuries under the Americans with Disabilities Act. On October 5, Defendant filed an answer to Plaintiff's second amended complaint ("Second Amended Complaint") (ECF No. 64).

On November 8, Defendant filed the Motion for Summary Judgment now before this Court (ECF No. 65). On December 6, Plaintiff filed a response to Defendant's Motion for Summary Judgment (ECF No. 69). Finally, on December 23, Defendant filed a reply to Plaintiff's response (ECF No. 72).

## II. LEGAL STANDARD

In a civil case, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." FED. R. CIV. P. 56(b). When a summary judgment movant does not have the burden of proof on a claim, it may obtain summary judgment by pointing the court to the *absence* of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue of material fact for trial. *See id.* at 324–25 (citations omitted); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted) (stating that "if the movant does, however, meet this burden [of demonstrating the absence of a genuine issue of material fact], the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial").

3

A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To meet its burden of showing that there is a genuine issue of material fact for trial, the nonmovant must show more than "some metaphysical doubt as to the material facts," or by "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal marks omitted). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Id.* at 1076. Additionally, summary judgment evidence must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1994) (stating that the court "must review the facts drawing all inferences most favorable to the party opposing the motion" (internal marks omitted)).

### III. ANALYSIS

In the Second Amended Complaint, Plaintiff alleges several causes of action listed below as follows:

- Disparate treatment and retaliation under Chapter 21 of the Texas Labor Code (also known as the Texas Commission on Human Rights Act, or the "TCHRA");

- Retaliation under 42 U.S.C. § 2000e-3(a) ("Title VII");

- Violations under the Family Medical Leave Act (the "FMLA"); and

- Disparate treatment and retaliation under the Americans with Disabilities Act (the "ADA").

In response to these claims, Defendant first argues that they all should be dismissed "because Plaintiff failed to meet mandatory requirements contained in all the statutes that contain deadlines

that must be met in order for a case to move forward." ECF No. 65 at 12–13. Defendant then argues on a variety of grounds that Plaintiff has failed to meet essential elements of each of his claims.

The Court will first analyze the preliminary issue of administrative exhaustion. Then, when examining Plaintiff's claims and Defendant's arguments against them, the Court will address them in an order different from that listed by Plaintiff in his Second Amended Complaint. As explained below, Plaintiff's claims under state law are largely governed by the same legal standards as their counterparts under federal law. Consequently, the Court determines that claims of the same kind are best discussed together. Specifically, the Court will address Plaintiff's disparate treatment claim under Texas law with his disparate treatment claim under the ADA and his retaliation claim under Texas law with his retaliation claim under Title VII and the ADA.

### A. Administrative Exhaustion

The Court begins by examining the issue of administrative exhaustion under Plaintiff's claims under both federal and state law.

#### 1. Administrative Exhaustion under Title VII and the ADA

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the [Equal Employment Opportunity Commission ("EEOC")] and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). Administrative exhaustion under the ADA regarding employment follows the same procedures as that under Title VII. *See* 42 U.S.C. § 12117 ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of [Title VII] shall be [those provided] . . . to any person alleging discrimination on the basis of disability in violation of any provision of [the ADA] . . . concerning employment.").

In its recent opinion in *Fort Bend Cty., Texas v. Davis*, the Supreme Court has summarized

the procedures for administrative exhaustion for Title VII claims:

> Title VII directs that a charge shall be filed with the EEOC by or on behalf of a
> person claiming to be aggrieved within 180 days after the alleged unlawful
> employment practice occurs. For complaints concerning a practice occurring in a
> State or political subdivision that has a fair employment agency of its own
> empowered to grant or seek relief, Title VII instructs the complainant to file her
> charge first with the state or local agency. The complainant then has 300 days
> following the challenged practice, or 30 days after receiving notice that state or
> local proceedings have ended, whichever is earlier, to file a charge with the EEOC.
> If the state or local agency has a "worksharing" agreement with the EEOC, a
> complainant ordinarily need not file separately with federal and state agencies. She
> may file her charge with one agency, and that agency will then relay the charge to
> the other.

139 S. Ct. 1843, 1846 (2019) (internal marks omitted). Significantly, the Civil Rights Division of

the Texas Workforce Commission (the "TWC" or, in reference to the Civil Rights Division

specifically, the "TWCCRD") has a worksharing agreement with the EEOC. *See* Tex. Admin.

Code § 819.76. It therefore follows that a plaintiff filing a complaint regarding an employment

practice occurring in Texas has 300 days to file a charge with the EEOC under Title VII and the

ADA. *See also Collier v. Dallas Cty. Hosp. Dist.*, No. 3:17-CV-3362-D, 2019 WL 2394225, at *5

(N.D. Tex. June 6, 2019), *aff'd*, 805 F. App'x 306 (5th Cir. 2020) (Fitzwater, S.J.) ("In states such

as Texas, which provide a state administrative mechanism to address claims of employment

discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300

days after learning of the conduct alleged." (citations omitted)). In *Davis*, the Supreme Court also

held that:

> Title VII's charge-filing requirement is not of jurisdictional cast. Federal courts
> exercise jurisdiction over Title VII actions pursuant to 28 U.S.C. § 1331's grant of
> general federal-question jurisdiction, and Title VII's own jurisdictional provision,
> 42 U.S.C. § 2000e–5(f)(3) (giving federal courts "jurisdiction [over] actions
> brought under this subchapter"). Separate provisions of Title VII, § 2000e–5(e)(1)
> and (f)(1), contain the Act's charge-filing requirement. Those provisions do not

6

speak to a court's authority or refer in any way to the jurisdiction of the district courts. Instead, Title VII's charge-filing provisions speak to a party's *procedural* obligations.

139 S. Ct. at 1850–51 (emphasis added) (select internal marks omitted).

Here, Plaintiff filed a Charge of Discrimination (the "Charge") (ECF No. 70-1 at 141) with the EEOC on June 29, 2018. Because Plaintiff was terminated on or around December 1, 2017, Plaintiff's Charge is well within 300 days of Defendant's alleged discriminatory practice against him. Therefore, Plaintiff's Charge is timely.[2]

Defendant objects to this conclusion on the ground that the Charge is "over 13 ½ [*sic*] months *after* the accidental horn honk that occurred on May 15, 2017." ECF No. 65 at 14. "Therefore, the Court should conclude Plaintiff's EEOC Charge was late by more than a year and his claims of unlawful discrimination and retaliation pertaining to the horn honk incident in May 2017 should be dismissed." *Id.*

However, this objection misunderstands the 300-day deadline. Under the relevant law discussed above, a plaintiff filing a complaint about an unlawful employment practice in Texas has 300 days to file a charge with the EEOC from *the date of the alleged practice*. In the instant case, the unlawful employment practice alleged by Plaintiff is not the horn-related injury that occurred on May 15, 2017, but rather his termination of employment on or around December 1, 2017. Consequently, Plaintiff filed his Charge in a timely fashion. Because he has exhausted all administrative remedies under Title VII and the ADA and received a statutory notice of a right to sue, ECF No. 70-1 at 160, Plaintiff is permitted to pursue his Title VII and ADA claims in this Court.

---

[2] For this reason, the Court does not need to examine here whether the "Intake Questionnaire" filed by Plaintiff with the EEOC on or around December 15, 2017, qualifies as a charge for the purposes of his Title VII and ADA claims.

### 2. Administrative Exhaustion under the TCHRA

The TCHRA also addresses employment discrimination and the administrative exhaustion

procedures for claims arising under it. *Sw. Convenience Stores, LLC v. Mora*, 560 S.W.3d 392,

399–400 (Tex. App. 2018). Specifically:

> Chapter 21 of the Texas Labor Code [(the "Act")] . . . makes it unlawful for an employer
> to discriminate against an employee with respect to compensation or the terms, conditions,
> or privileges of employment because of race, color, disability, religion, sex, or national
> origin. The Act is modeled on federal law and executes the purposes of Title VII of the
> Civil Rights Act of 1964. Accordingly, we may consider federal law that interprets
> analogous Title VII provisions. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507
> (Tex. 2012) ("[W]e consider the plain terms of the [Labor Code] and our precedent, and
> look to federal law for guidance only when the relevant provisions of Title VII are
> analogous.").
>
> A person claiming a violation of the Act must first exhaust her administrative remedies
> prior to bringing a civil action. Exhausting administrative remedies is a "mandatory
> prerequisite" in Texas. . . . To bring a lawsuit for unlawful employment practices, a plaintiff
> must first have filed an administrative charge with the EEOC or the TWC. A plaintiff must
> file her charge within *180 days* of the alleged discriminatory practice and any late-filed
> charge will be dismissed as untimely. Tex. Lab. Code Ann. §§ 21.201, 21.202. This process
> affords the opportunity for informal investigation of the allegation while reducing costly
> litigation. In short, unless and until an employee timely submits her complaint against her
> employer to the EEOC or TWC in the form of a charge of discrimination, Texas courts are
> barred from adjudicating that complaint.

*Mora*, 560 S.W.3d at 399–400 (emphasis added) (select internal marks omitted).

Notably, the deadline for a charge filed under the TCHRA is 180 days from the date of the

alleged unlawful employment practice — not 300 days, as is the case for charges filed under Title

VII or the ADA. *See also Collier*, WL 2394225, at *5 ("A complaint under the TCHRA must be

filed not later than the 180th day after the date the alleged unlawful employment practice

occurred." (internal marks omitted)). Finally, as noted earlier, the Civil Rights Division of the

TWC has a worksharing agreement with the EEOC, meaning that a charge filed with the EEOC

counts for purposes of the TCHRA.

Here, Plaintiff's Charge filed with the EEOC counts as a charge filed with the Civil Rights Division of the TWC for the purposes of the TCHRA. However, Plaintiff's Charge was filed with the EEOC on June 29, 2018 — 210 days after he was terminated by Defendant on December 1, 2017. Because the date of filing exceeds the 180-day deadline under the TCHRA, Plaintiff's Charge was untimely under this statute.

However, Plaintiff argues that the Intake Questionnaire with the EEOC that he signed on December 13, 2017 (the "Intake Questionnaire") (ECF No. 70-1 at 101–09) qualifies a charge for EEOC purposes — and thus for purposes of the TCHRA. Because December 13, 2017, is well within 180 days of the date of Plaintiff's termination, Plaintiff's Intake Questionnaire would qualify as a timely charge for the purposes of the TCHRA. Accordingly, the Court must examine whether the Intake Questionnaire does in fact qualify as a charge.

Regarding what filings count as a charge,

> the Supreme Court has held that a questionnaire may qualify as a charge if it satisfies the EEOC's charge-filing requirements, and if it can be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). . . . [E]very circuit (including this one) to have considered whether *Holowecki*'s holding extends to Title VII and the ADA has determined that it does. Thus, an intake questionnaire asserting claims under the ADA can qualify as a charge if it complies with *Holowecki*'s minimum standards.

*EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753–54 (5th Cir. 2020).

Both the Supreme Court and the Fifth Circuit have held that a plaintiff's intake questionnaire to the EEOC can qualify as a charge under the *Holowecki* test. *See Holowecki*, 552 U.S. at 404 (finding that the "[r]espondent's completed intake form" constituted a charge in part because it "contained all of the information outlined in 29 CFR § 1626.8 . . . ."); *Vantage Energy Servs., Inc.*, 954 F.3d at 754 ("The next question is whether [former employee] Poston's intake

9

questionnaire qualified as a charge under the *Holowecki* test. The EEOC contends that it did, and we agree."). The Fifth Circuit also has held that checking "Box 2" on an intake questionnaire suffices to request agency action:

> The intake questionnaire also satisfies *Holowecki*'s additional request-to-act condition. Poston checked "Box 2" on the questionnaire, which states "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." This constitutes a clear manifestation of Poston's intent for the EEOC take remedial action.

*Vantage Energy Servs., Inc.*, 954 F.3d at 755.

Here, Plaintiff's Intake Questionnaire does not qualify a timely charge. Although Plaintiff checked "Box 2" at the end of his Intake Questionnaire, ECF No. 70-1 at 104, his Intake Questionnaire fails to include "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices" as required by 29 C.F.R. § 1626.8. Specifically, although Plaintiff describes two other instances of discriminatory conduct occurring on October 29, 2016, ECF No. 70-1 at 102,[3] Plaintiff fails to describe the unlawful employment practice that he allegedly suffered on December 1, 2017. At most, Plaintiff describes *the horn-related accident* on May 15, 2017, in attachments to his Intake Questionnaire. *See* ECF No. 70-1 at 105–06, 108–09. But this is irrelevant to Plaintiff's claims. The accident is not the relevant unlawful employment practice — Plaintiff's termination on December 1, 2017, is.

Consequently, Plaintiff's Intake Questionnaire cannot qualify as a charge with the EEOC and thus does not constitute a timely charge under the TCHRA. Because Plaintiff has failed to exhaust his administrative remedies under the TCHRA, this Court cannot adjudicate Plaintiff's TCHRA claim of disparate treatment and retaliation. This fact alone is sufficient reason for this

---

[3] Because Plaintiff appears to have omitted these allegations in his Second Amended Complaint, the Court declines to address them or any claims predicated upon them.

Court to grant Defendant's Motion for Summary Judgment with respect to Plaintiff's TCHRA claim. However, as subsequent sections of this Memorandum Opinion and Order will show, Plaintiff's TCHRA claim fails to survive summary judgment even on its merits. Accordingly, the Court will analyze Plaintiff's TCHRA claim in the sections below for the sake of completeness.

### B. Disparate Treatment under the Texas Labor Code and the ADA

Disparate treatment is "the most easily understood type of discrimination." *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). "In a discriminatory-termination action under the ADA, the [plaintiff] may either present direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013)). Because Plaintiff has presented no direct evidence of discrimination, the Court's analysis will be limited to the *McDonnell Douglas* method.

To establish a *prima facie* case, "a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Id.* at 695 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). "Under the ADA, 'discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome.'" *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (quoting *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503–04 (5th Cir. 2002)).

If a plaintiff establishes a *prima facie* case of discrimination, then the "burden shifts to the employer to articulate legitimate, nondiscriminatory reason for its employment action." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003) (citing *McDonnell Douglas*, 411 U.S. at 802).

11

If the employer meets this burden, the presumption of intentional discrimination disappears. *Id.* at 49 n.3. But a plaintiff must "offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *LHC Grp.*, 773 F.3d at 702 (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

In response to a motion for summary judgment, an employee must present "substantial evidence" that the employer's legitimate, nondiscriminatory reason for termination is pretextual. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). Pretext is established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Delavel v. PTech Drilling Tubulars*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Laxton*, 333 F.3d at 578).

### 1. *"Disabled" within the Meaning of the ADA and Texas Labor Code*

Defendant first argues that Plaintiff's claims for disparate treatment fail because he has not established that he is disabled or is regarded as disabled under the ADA and the Texas Labor Code. ECF No. 65 at 15. Specifically, Defendant alleges that Plaintiff has made no showing that the horn-related accident affected his major life activity of working. *Id.* This is in reference to the ADA's definition of "disability," which with respect to an individual means "a physical or mental impairment that substantially limits one or more major life activities of such individual" under 42 U.S.C. § 12102(1)(A).

12

The EEOC has issued detailed regulations regarding the definition of "disability" under the ADA:

> Physical or mental impairment means—
> (1) *Any physiological disorder or condition*, cosmetic disfigurement, or anatomical loss *affecting one or more body systems*, such as neurological, musculoskeletal, *special sense organs*, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h) (emphasis added).

> The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a *demanding standard*. . . . An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."

29 C.F.R. § 1630.2(j) (emphasis added). Major life activities include, but are not limited to:

> Caring for oneself, performing manual tasks, seeing, *hearing*, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and *working* . . . .

29 C.F.R. § 1630.2(i) (emphasis added).

Here, Plaintiff claims in his Second Amended Complaint that "he was and continues to be treated for a ruptured ear drum, permanent hearing loss, requiring a hearing aid for life, dizziness and a variety of other neurological injuries." ECF No. 60 at 5. In response, Defendant argues that Plaintiff's loss of hearing has not affected his major life activity of working. ECF No. 65 at 20–21. However, working is only one of the enumerated activities that may constitute a major life activity. Thus, whether Plaintiff's accident has substantially limited his ability to work or has resulted in the need for accommodations at work is not dispositive.

Next, Defendant cites a string of cases, including *Carothers v. County of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015), to show that Plaintiff still must demonstrate his impairment limits his ability to perform a class of jobs or broad range of jobs. ECF No. 72 at 8. However, this rule is not relevant here. This is because Plaintiff has not alleged that his substantially limited major life activity is specifically his ability to work. This stands in stark contrast to the plaintiff in *Carothers*. *See Carothers*, 808 F.3d at 1147 ("if 'working' is the only major life activity [plaintiff] claims is impaired, then she has to show that her [impairment] 'significantly restricted [her] ability to perform either a class of jobs or a broad range of jobs'") (quoting *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 623 (7th Cir. 2012)). Viewed in a light most favorable to Plaintiff, the record reflects that the major life activity that has been substantially limited by the accident is in fact his hearing, which is one of the enumerated activities listed in 29 C.F.R. § 1630.2(i).

Because Plaintiff claims he has suffered a loss of hearing, the relevant inquiry is whether Plaintiff's hearing is substantially limited pursuant to the language in 42 U.S.C. § 12102(1)(A). Defendant argues that "Plaintiff has provided no evidence that his hearing impairment substantially limits his hearing compared to most people in the general population, nor did Plaintiff present evidence about the ameliorative effects of any hearing aids available or used by him to correct his hearing." ECF No. 72 at 9.

However, the Court is not persuaded for two reasons. First, "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. § 1630.2(j)(vi). Hearing aids, like what Plaintiff uses, are listed as a mitigating measure under the regulations. 29 C.F.R. § 1630.2(j)(5)(i). Second, this Court sees no reason why permanent hearing loss requiring a hearing aid for life is not at least *some* evidence of his hearing being substantially limited compared to most people in the

14

general population. As further evidence, Plaintiff states in his response to Defendant's Motion for Summary Judgment that he has suffered a thirty-three percent loss of hearing. ECF No. 69 at 25.

Because the substantial limitation inquiry is not meant to be demanding, the Court FINDS that Plaintiff has alleged sufficient facts to show that his hearing is substantially limited, and therefore FINDS that Plaintiff has made a sufficient showing that he is disabled under the ADA.

The Court next addresses Defendant's argument that Plaintiff has not established that he is disabled under the Texas Labor Code, which adopts the same definition as the ADA:

> 'Disability' means, with respect to an individual, a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment.

Tex. Lab. Code Ann. § 21.002(6); *see also* 40 Tex. Admin. Code § 819.11(5) ("Disability --A mental or physical impairment that substantially limits at least one major life activity of an individual, a record of such mental or physical impairment, or being regarded as having such an impairment as set forth in §3(2) of the Americans with Disabilities Act of 1990, as amended, and Texas Labor Code §21.002(6)."). "Because TCHRA 'parallels the language of the [ADA]', Texas courts follow ADA law in evaluating TCHRA discrimination claims." *Williams v. Tarrant Cty. Coll. Dist.*, 717 Fed. Appx. 440, 444–45 (5th Cir. 2018) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285–87 (5th Cir. 2004)).

The Court has found that Plaintiff has made a sufficient showing that he is disabled under the ADA. Therefore, the Court also FINDS that Plaintiff has made a sufficient showing that he is disabled under the Texas Labor Code.

### 2. *Whether Plaintiff Was Qualified for the Job*

Having shown that he is disabled, Plaintiff must also show that he was qualified for the job as a firefighter. "The plaintiff bears the burden of proving that an available position exists that he

was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315–16 (5th Cir. 2007) (citing *Forman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 n.14 (5th Cir. 1997)); *see also* 42 U.S.C. § 12111(8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). "A plaintiff can establish that he is qualified by showing that either (1) he could perform the essential functions of the job in spite of his disability, or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2020) (cleaned up) (quoting *LHC Grp.*, 773 F.3d at 697).

"Essential functions" are "fundamental" as opposed to "marginal" job duties. 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential for several reasons, such as "the position exist[ing] to perform that function"; because of "a limited number of employees available" to perform the function, or the function being "so highly specialized that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). "Fact-finders must determine whether a function is 'essential' on a case-by-case basis." *Credeur v. Louisiana Through Off. of the Att'y Gen.*, 860 F.3d 785 (5th Cir. 2017) (quoting *LHC Grp.*, 773 F.3d at 698). The EEOC has listed seven non-exhaustive factors to guide the essential-function inquiry:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). The Fifth Circuit also has addressed whether an individual is qualified under 42 U.S.C. § 12111(8) in many cases. *See, e.g., Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582 (5th Cir. 2020) (finding that a diabetic who suffered a diabetic-induced loss of consciousness at work was unable to perform essential functions of the job); *Gonzalez v. United Parcel Serv.*, 777 Fed. Appx. 735, 738 (5th Cir. 2019) (finding that a plaintiff was unqualified for a desk job because he could not work more than four hours a day and had difficulty making repetitive arm, hand, and wrist movements); *Credeur*, 860 F.3d at 795 (5th Cir. 2017) (finding that a litigation attorney was unqualified because she could not maintain regular work-site attendance); *Spencer v. KS Mgmt. Serv., L.L.C.*, 680 Fed. Appx. 311, 314 (5th Cir. 2017) (finding that a medical assistant was unqualified because she could not pass a test covering medications and vaccinations).

Here, nothing in the record suggests that Plaintiff requested or required any kind of accommodation. Furthermore, there is no evidence that he was unable to perform any of the physical demands that the job requires or that the use of a hearing aid would impair his ability to perform the essential functions of the job. Moreover, Plaintiff was given a full release back to work on November 27, 2017, under the expectation that he would perform those essential functions. ECF No. 69 at 21.

Defendant argues that Plaintiff "failed to demonstrate that he could perform the functions of the job as a preliminary matter" when he refused to sign an acknowledgment of receipt of the packet of employment policies. ECF No. 72 at 13. It is true that among the factors listed in 29 C.F.R. § 1630.2(n)(3), courts should give the greatest weight to an employer's judgment on essential functions of a job. *Credeur*, 860 F.3d at 792. However, "courts should not give blind deference to an employer's judgment, but should instead evaluate the employer's words alongside its policies and practices." *Id.* at 794 (citing *Ford Motor Co.*, 782 F.3d 753, 765–66 (6th Cir. 2015)). Accordingly, this Court can simply not accept that "signing a packet" is an essential

function of a firefighter and that Plaintiff rendered himself unqualified for the job by declining to sign it until he could review it with his lawyer.

### 3. Defendant's Reason for Taking an Adverse Employment Action

There is no dispute among the parties that termination is an adverse employment action. *See LHC Grp.*, 773 F.3d at 700 ("[Plaintiff] suffered an adverse employment action-namely, termination") (citing 42 U.S.C. § 12112(a)). Plaintiff alleges that the adverse employment action taken against him was his termination occurring two days after his release to full duty. ECF No. 69 at 25. In response, Defendant argues that Plaintiff has presented no evidence that any alleged disability was a motivating factor for his termination to prove his *prima facie* case. ECF No 72. At 11. Defendant also argues that even assuming otherwise, it has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment by alleging three instances of Plaintiff's insubordinate and disruptive behavior. ECF No. 65 at 18.

Plaintiff offers no evidence showing that his termination was influenced by a loss of hearing to begin with. He has presented no direct evidence of discrimination and no evidence that his hearing disability was even a motivating factor. While he has alleged that he suffered harassment and bullying in the past, these incidents occurred before he became disabled. ECF No. 60 at 2–3. After he became disabled, he spent most of that time on leave and the rest on light duty. *Id.* at 6–7. Plaintiff argues that the Court should infer discrimination from Defendant's conduct. However, this conduct could have occurred either for the reasons given by Defendant or even for reasons that might support Plaintiff's claims under Title VII.

Because Plaintiff has not shown that his disability played a role in Defendant's decision to terminate his employment, the Court FINDS that Plaintiff has failed to make a *prima facie* showing

18

of disparate treatment under the ADA. Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's ADA claim.

### C. Retaliation under the Texas Labor Code, Title VII, and the ADA

Title VII and the Texas Labor Code both prohibit employers from retaliation against employees engaged in protected activities. *See* 42 U.S.C § 2000e-3(a) (2005); Tex. Lab. Code Ann. § 21.055. "In a retaliation case, the plaintiff must first make a *prima facie* showing: (1) that he is engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)); *see also Univ. of Tex., Sw. Med. Ctr. v. Nascar*, 570 U.S. 333, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened [motivating factor] causation test stated in § 2000e–2(m).") A plaintiff has engaged in protected activity if he has "opposed any practice made an unlawful employment practice" or "made a charge, testified, or participated in an investigation proceeding or hearing." 42 U.S.C § 2000e-3(a). Retaliation claims under both federal and state law utilize the same Title VII framework. *See Wallace v. Seton Fam. of Hosps.*, 777 Fed. Appx. 83, 90 (5th Cir. 2019).

Plaintiff's claims of retaliation under the ADA mirror his claims under the Texas Labor Code and Title VII. Specifically, Plaintiff claims that he engaged in protected conduct when he opposed Defendant's unlawful employment practices and when he filed a complaint with the EEOC and the TWCCRD. ECF No. 60 at 12. The legal analysis is also the same. *See Feist v. Louisiana, Dept. of Justice, Off. of the Att'y. Gen.*, 730 F.3d 450 (5th Cir. 2013) ("To establish a prima facie case of retaliation under the ADA or Title VII, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse

19

employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.").

The ADA also provides the same definition of "protected activity" as that under Title VII. *See* 42 § U.S.C. 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter"). Unlike the requirements for establishing a case of disparate treatment under the ADA, a plaintiff does not need to show that he suffers from an actual disability; rather, he only needs "a reasonable, good faith belief that the statute has been violated." *Tabatchnik v. Cont'l Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008) (quoting *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1264 (10th Cir. 2001)). Plaintiff easily satisfies this requirement, as this Court has already determined that he has a disability under the ADA. *Supra* at 15.

### 1. Protected Activity

"To satisfy the 'opposition clause,' [a plaintiff] need not prove that [the defendant's] practices were actually unlawful, but only that he had 'a reasonable belief that the employer was engaged in unlawful employment practices.'" *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)). Plaintiff claims that he engaged in protected activity when he opposed Defendant's alleged unlawful employment practices and when he prepared and filed an administrative complaint with the EEOC and the TWCCRD. ECF No. 60 at 10.

Regarding the first claim, Plaintiff complained to his supervisors and followed up with a formal grievance including allegations of willful negligence and intentional act to cause harm. *See* ECF Nos. 69 at 22, 60 at 5. However, the Fifth Circuit has held that "[a]n employee's complaint

to her employer that is vague, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Jenkins v. Louisiana Workforce Comm'n*, 713 F. Appx. 242, 246 (5th Cir. 2017) (quoting *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015)). For example, in *Jenkins*, the Fifth Circuit reasoned that while the plaintiff was African American and the other parties are white, her complaint made no allegation that her grievance was opposing or protesting racial or sexual discrimination. *Id.* In the instant case, while Plaintiff alleges that he informally complained about harassment and prohibited gambling in 2016, Plaintiff's Second Amended Complaint only specifies that his May 15, 2017 grievance pertained to "willful negligence and intentional act to cause harm to another firefighter" related to the horn-related accident. ECF No. 60 at 5. Because this grievance did not reference unlawful employment practices under Title VII, Plaintiff's grievance does not constitute protected activity within the meaning of Title VII. Similarly, Plaintiff's grievance does not constitute protected activity within the meaning of § 21.055 of the Texas Labor Code or 42 § U.S.C. 12203(a).

Plaintiff also argues that his filing of the EEOC and TWCCRD claims constitutes protected action. ECF No. 60 at 10. But the Fifth Circuit has held that post-termination filings are not protected actions. *See Castlino v. Thomas*, 141 Fed. App'x 255, 257 (5th Cir. 2005) ("[Plaintiff] also alleges that he was terminated in retaliation for filing an EEOC discrimination charge. This claim is without merit since the EEOC charge was filed after [plaintiff] had been terminated by the [defendant]"). However, this case is arguably distinguishable from *Castlino*. This is because while Plaintiff did not actually file the complaint until December 15, 2017 — two weeks after he was fired — he provided notice to Defendant in mid-September of 2017 of the charge of discrimination that he was prepared to file, notice of his retention of counsel, and an invitation to engage in pre-filing discussions. ECF No. 60 at 6, 7.

21

Some jurisdictions have held or suggested that notice of intent to file a charge also constitutes protected activity. *See, e.g., Moore v. Castro*, 192 F. Supp. 3d 18, 44 (D.D.C. June 17, 2016); *Elwakin v. Target Media Partners Operating Co. LLC*, 901 F. Supp. 2d 730, 759 (E.D. La. Oct. 9, 2012) (where the district court reasoned that the defendant could not have retaliated because there was no indication that the plaintiff had threatened to file a charge during the course of her employment); *Smith v. R.R. Donnelley and Sons Co.*, No. 10–1417, 2011 WL 4346340 (E.D. Pa. Sept. 16, 2011); *EEOC v. Eagle Mgmt. Grp.*, No. 1:05–CV–1215–WBH/AJB, 2006 WL 8435746, at *8 (N.D. Ga. Sept. 18, 2006); *Williams v. Dictaphone Corp.*, 112 F. Supp. 2d 267, 277–78 (W.D.N.Y. Sept. 16, 2000). While *Smith* addressed the issue of a notice of intent to file a workers' compensation claim, this Court finds its underlying reasoning persuasive and applicable to the instant case:

> [I]t is the reporting of the work-related injury in conjunction with the employee's expression of intent to file a workers compensation claim that is enough to trigger the protection afforded by the Act. This stands to reason because, without question, the internal reporting of a workplace injury to the employer is the first step in pursuing a workers' compensation remedy. A contrary conclusion limiting the definition of protected activity to only the filing of a claim would frustrate the Act by giving employers a window to escape liability by beating an injured employee to the punch. That is, an employer who had been notified that an employee has been injured on the job and knows of the injured employee's intent to file a workers compensation claim, if the employer is first to act, may terminate the injured employee before that employee reasonably has the opportunity to actually the claim documents.

2011 WL 4346340, at *6. Similarly, a rule which would permit employers to retaliate against employees after giving a notice of intent to file a charge would frustrate the purposes of Title VII and its progeny by allowing employers to terminate the employees and beat them to the punch before they actually file.

The limited Fifth Circuit case law on the issue also indicates that a notice of intent to file is protected activity. In *Jefferies v. Harris Cty. Cmty. Action Ass'n*, the plaintiff argued that she was fired in retaliation for filing an EEOC charge. 615 F.2d 1025, 1035 (5th Cir. 1980). The district court found that the defendant could not have received notice of the filing of the charge until well after the decision was made to terminate her employment. *Id.* The Fifth Circuit could not consider this to be harmless error because the record indicated that the plaintiff had alerted the defendant of her intent to file the charge. *Id.* After remand, the Fifth Circuit affirmed the district court's decision that while the defendant had knowledge that the plaintiff had filed an EEOC complaint prior to her discharge, "the evidence showed that she was in fact discharged for . . . a legitimate and non-pretextual reason." *Jefferies v. Harris Cty. Cmty. Action Ass'n*, 693 F.2d 589, 591 (5th Cir. 1982). Notably, on facts similar to this case, the plaintiff's notice of intent was sufficient for the burden to then shift to the defendant under the *McDonnell Douglas* test.

Here, while Defendant claims it never received notice from the EEOC or the TWCCRD that Plaintiff filed a charge until after his termination, it does not deny that Plaintiff had provided notice of his intent to file. ECF No. 65 at 29. Given the above reasoning, this Court holds that Plaintiff engaged in protected activity when he gave Defendant notice of his intent to file charges under the EEOC and the TWCCRD.

### 2. Causal Connection

Even if the activity Plaintiff engaged in was protected, Plaintiff must provide sufficient evidence to show a causal nexus between his protected activity and his termination. "To establish a causal connection, a plaintiff must first show that the decision maker was aware of the protected activity." *McLaurin v. City of Jackson Fire Dept.*, 217 Fed. Appx. 287, 288

23

(5th Cir. 2006) (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003)). This element is satisfied because Defendant had notice of Plaintiff's intent to file charges.

"[T]he mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough" to prove a connection between the protected activity and the adverse employment action. *Roberson v. Alltell Information Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)). However, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson*, 110 F.3d at 1180 (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)).

Moreover, "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (quoting *Weeks v. NationsBank, N.A.*, No. CIV.A.3:98–CV–1352M, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000)). However, close temporal proximity, without more, is insufficient to show causation. *See McDowell v. Home Depot USA, Inc.*, 126 Fed. Appx. 168, 170 (5th Cir. 2005) (citing *Swanson*, 110 F.3d at 1188). Such evidence could include "an employment record that does not support dismissal, or an employer's departure from typical policies and procedures." *Feist*, 730 F.3d at 450 (citing *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011)).

Here, Defendant argues that the causal connection between Plaintiff's complaints and grievance and his termination is cast into doubt by the fact that his first complaint was in 2016 and he did not file a formal grievance until mid-May of 2017. ECF No. 65 at 25. However persuasive that may be, the same cannot be said about the timing between Defendant being put on notice of Plaintiff's intent to file with the EEOC and the TWCCRD and Plaintiff's termination.

Plaintiff gave his notice in mid-September of 2017 and was terminated on November 30, 2017. *See* Nos. 60 at 6–7, 65 at 5. Because these events occurred within three months of each other, they are close enough in proximity under Fifth Circuit precedent to help establish a causal connection for summary judgment purposes.

As noted, this by itself is not sufficient to satisfy the causal requirement without other evidence of retaliation. In his Second Amended Complaint, Plaintiff stated that he had been an employee of the Fire Department since 1994, served "with distinction and without reprimand," and obtained numerous specializations during that time. ECF No. 60 at 2. A service record of 23 years with distinction and without reprimand which includes many specializations is "an employment record that does not support dismissal" by any standard. However, Defendant disputes this record, alleging three instances of insubordination in November of 2017. But viewed in a light most favorable to Plaintiff, the Court FINDS that Plaintiff's employment record for the 23 years prior to his final month of employment and the close temporal proximity between his notice of intent to file an EEOC claim and his termination satisfies the causal requirement to survive summary judgment.

### 3. Defendant's Reason for Terminating Plaintiff

The *McDonnell Douglas* burden shift applies to retaliation claims under both the ADA and Title VII. *See Tabatchnik*, 262 Fed. Appx. at 676 ("If the plaintiff establishes a prima facie case [under the ADA], the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. If such a reason is provided, the plaintiff must submit sufficient evidence that the proffered reason is a pretext for retaliation. The employee must show that but for the protected activity, the adverse employment action would not have occurred." (citations omitted)); *Dickerson v. Metro. Dade County*, 659 F.2d 574, 580 (5th Cir. 1981) ("The complainant

in a Title VII action bears the initial burden of establishing a prima facie case of retaliatory conduct. The burden of production then shifts to the employer to articulate some legitimate nondiscriminatory reason for terminating the employee." (citations omitted)). In *Aldrup v. Caldera*, the Fifth Circuit held that the "failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action." 274 F.3d 282, 288 (5th Cir. 2001) (citing *Chaney v. New Orleans Pub. Facility Mgmt.*, 179 F.3d 164, 167 (5th Cir. 1999)).

"If the employer articulates a legitimate nondiscriminatory reason for termination, the burden shifts back to the plaintiff to show that that articulated reason was pretextual. *Dickerson*, 659 F.2d at 580. A plaintiff cannot establish pretext "even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274 (6th Cir. 2012) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)). The relevant question for the purposes of a pretext analysis is whether a defendant's actions were based on an honest belief. *See Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931, 934 (7th Cir. 2003); *Moody v. M.W. Kellogg Co.*, No. 98-20757, 1999 WL 153032, at *6 n.16 (5th Cir. 1999).

Here, Defendant claims that it had a legitimate nondiscriminatory reason in taking an adverse employment action. Specifically, it alleges Plaintiff was insubordinate in his refusal to sign documents, his refusal to leave the station following his being placed on leave, and his refusal to meet with the Fire Chief to discuss the prior two allegations of insubordination. *See* ECF Nos. 72 at 10, 65 at 18–19. Because Defendant has articulated a legitimate nondiscriminatory reason for terminating Plaintiff's employment, the burden then shifts back to the Plaintiff to show that Defendant's given reasons are mere pretext.

26

Much of the parties' arguments relate to the "packet incident" which occurred roughly three days after Plaintiff's return for light-duty. ECF No. 60 at 6. Plaintiff argues that he did not refuse to sign the documents but rather only requested the opportunity to read and review them with his attorney, and that Defendant's assertion is contradicted by others who were present. *Id.*; *see also* ECF No. 69 at 21. Plaintiff further states that he was not being insubordinate by entering the station a couple of days later because he received permission to enter the station to check his e-mail account. *Id.* at 7.

However, although Plaintiff argues that he was not being insubordinate, the relevant question is whether Defendant *honestly believed* he was. Plaintiff has shown no evidence that that was not the case. Similarly, Plaintiff has presented no evidence that Defendant's "slow walking" of his complaint and its fraud complaint filed against him were done in bad faith. ECF No. 69 at 25–26. Furthermore, Plaintiff's assertion that his conduct "should be seen through the facts which would frustrate any reasonable person" is evidence that Defendant honestly believed he was being insubordinate. ECF No. 69 at 23. Thus, it appears that there is no genuine issue of material fact regarding these instances of Plaintiff's conduct. Rather, there is only a difference in how the parties interpreted these events.

Plaintiff also argues that Defendant's assertion that the packet incident rendered him unqualified to return to his job after 23 years of service supported by exemplary evaluations "strains credulity" and amounts to pretext. ECF No. 69 at 21. Perhaps most importantly, Plaintiff implies that that his termination had nothing to do with the prior two instances of alleged insubordination because he was given a full release back to work on November 27, 2017. *Id.* Yet, Defendant terminated his employment a few days later. *Id.*

27

Taking these claims as true, this Court finds these arguments more persuasive. However, Plaintiff does not deny Defendant's allegation that he failed to appear for a meeting at City Hall on November 29, 2017,[4] with the Fire Chief to discuss Plaintiff's conduct, thus resulting in a third and final allegation of insubordination which supports the adverse employment action.[5] Because Plaintiff's termination after three acts of insubordination is consistent with the facts and ruling in *Aldrup*, Defendant had a sufficient nondiscriminatory reason for his removal. 274 F.3d at 288 ("Given the wide discretion granted to administrative agencies in disciplining their employees, removal after three instances of insubordination [is] not arbitrary and capricious"). Moreover, the reasoning in *Aldrup* implies that even one act of insubordination is sufficient for termination. This is because insubordination is a sufficient reason for taking an adverse employment action, and termination is an adverse employment action. *See Sosa v. Coastal Corp.*, No. 02-40639, 2002 WL 31933068, at *3 (5th Cir. 2002) (where the defendant had a legitimate nondiscriminatory reason for terminating the plaintiff after only one act of insubordination). Like the plaintiff in *Sosa*, Plaintiff has offered no evidence that Defendant's "explanation was false, let alone pretextual." *Id.*

Plaintiff therefore has failed to show that Defendant's articulated reasons for his termination were pretextual. Consequently, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's retaliation claims under Title VII.

---

[4] Defendant's HR timeline states that Plaintiff "failed to appear at City Hall as directed by Chief" on November 30, 2017, to discuss his insubordinate behavior. See ECF No. 65 at 5, 7.

[5] Insubordination also violates Defendant's own policy, which cites Section 143.051 of the Texas Local Government Code. *See* ECF No. 65-2 at 40. The statute provides that a firefighter may be removed for "discourtesy to the public or to a fellow employee while the fire fighter or police officer is in the line of duty" and for "conduct prejudicial to good order." Tex. Loc. Gov't Code Ann. § 143.051(5),(8).

### D. Violations under the FMLA

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" an employee's FMLA rights. *Downey v. Strain*, 510 F.3d 534, 537 (5th Cir. 2007) (quoting 29 U.S.C. § 2615(a)(1)). 29 U.S.C. § 2617(a)(1) provides consequential damages and appropriate equitable relief against employers who violate § 2615. Appropriate equitable relief for FMLA claims may include injunctive relief. *See, e.g., Crugher v. Prelesnik*, 761 F.3d 610, 615 (6th Cir. 2014).

"For an employee to establish a prima facie FMLA interference claim, the employee must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Devoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (internal quotation marks omitted) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)). "To recover under the FMLA for failure to provide individualized notice, a plaintiff must show that the employer failed to comply with the notice requirement and that this noncompliance impaired the plaintiff's ability to exercise her rights under the FMLA, causing prejudice." *Bernard v. Bishop Noland Episcopal Day Sch.*, 630 Fed. Appx. 239 (5th Cir. 2015) (citing *Downey*, 510 F.3d at 541). Courts evaluating an FMLA claim must conduct a "retrospective, case-by-case examination" that addresses "whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions. *Downey*, 510 F.3d at 540 (quoting *Ragsdale v. World Wide, Inc.*, 535 U.S. 81, 90 (2002)).

Here, Plaintiff alleges that Defendant unlawfully and discriminatorily interfered with his rights under the FMLA. ECF No. 60 at 11. Specifically, Plaintiff alleges that Defendant failed to comply with the FMLA's notice requirements and by doing so interfered with his potential exercise

of those rights. ECF No. 69 at 27. Plaintiff also alleges that Defendant failed to reinstate his employment and violated the FMLA by terminating his employment. ECF No. 60 at 11. In response, Defendant first argues that this Court should reject Plaintiff's claims on the basis that Plaintiff's alleged FMLA rights were preempted by two Texas statutes. ECF No. 65 at 15. Therefore, this Court must first address this argument before it reaches Plaintiff's specific allegations.

### 1. FMLA Preemption

Defendant claims that since the Texas Workers Compensation Act (the "TWCA") and the Texas Civil Service Act (the "CSA") provide the Plaintiff greater leave rights than the FMLA and that Plaintiff is only pursuing his claim that Defendant interfered with his rights under the FMLA, Defendant could not have interfered with Plaintiff's FMLA rights because those rights were preempted by state law. *Id.* Defendant cites 29 U.S.C. § 2651(b), which states that "[n]othing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act." ECF No. 65 at 15. Defendant also cites a 2005 advisory opinion from the Department of Labor concluding from the FMLA's legislative history that Congress intended to protect more generous state laws from preemption by the FMLA. *Id.* at 12.

However, even granting that the relevant state law is more generous than the FMLA, it does not follow that the state law necessarily preempts the FMLA. In logical terms, it is a fallacy to infer the inverse from a conditional statement. For example, it does not necessarily follow from the statement "if Socrates is a man, then Socrates is not immortal" that "if Socrates is not a man, then Socrates is immortal." Similarly, it does not necessarily follow from the statement "if the federal law preempts state law, then the state law does not preempt the federal law" that "if the federal law does not preempt the state law, then the state law preempts the federal law." Nothing

in the cited statute implies that more generous state laws preempt the FMLA, and the Defendant fails to cite any existing case law that says otherwise.

Moreover, the definition of "preemption" suggests that state laws cannot preempt federal laws. For our purposes, "preemption" is defined as the "principle (derived from the Supremacy Clause) that a federal law can supersede or supplant any inconsistent state law or regulation." *PREEMPTION*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 817 (3d. Cir. 2019) ("The preemption doctrine stems from the Supremacy Clause, which provides that 'the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' Thus, 'Congress . . . has the power to preempt state law.' There are three categories of preemption: field preemption, conflict preemption, and express preemption" (citations omitted)).

To illustrate how the state and federal laws interact with each other, 29 C.F.R. § 825.701(a)(1) gives the following example:

> If State law provides 16 weeks of leave entitlement over two years, an employee needing leave due to his or her own serious health condition would be entitled to take 16 weeks one year under State law and 12 weeks the next year under FMLA. Health benefits maintenance under FMLA would be applicable only to the first 12 weeks of leave entitlement each year. If the employee took 12 weeks the first year, the employee would be entitled to a maximum of 12 weeks the second year under FMLA (not 16 weeks). An employee would not be entitled to 28 weeks in one year.

In this example, the hypothetical state law is less generous than the FMLA in the sense that it would allow only 16 weeks of leave over two years rather than the FMLA's 12 weeks per year. However, it is more generous in the sense that it would allow the employee to take those 16 weeks of leave in one year while still retaining the FMLA's 12-week entitlement for the following year. This would result in 28 weeks of leave over two years instead of 24. In the first year where the

employee takes 16 weeks of leave, the FMLA health benefits maintenance would still be applicable during the first 12 weeks and not be preempted by the state law. This example makes it clear that more generous state laws do not preempt the FMLA but rather only affect how those rights interact with each other. *See also* HRS-CB § 47:40 ("If an employer is subject to both the FMLA and another leave law, it must comply with the provisions that provide the greatest level of protection to employees").

Furthermore, even if state law could preempt federal law, family or medical leave is distinguishable from workers' compensation. For example, the FMLA entitles eligible employees to a total of 12 weeks of leave for reasons such as "the birth of a son or daughter," "the placement of a son or daughter with the employee for adoption or foster care," to care for "the spouse, or son, daughter, or parent of the employee if such spouse, son, daughter, or parent has a serious health condition," or because of "a serious health condition that makes the employee unable to perform." 29 U.S.C. § 2612(a)(1).

The CSA leave that Defendant cites applies only to police officers and firefighters — and only to those who are *injured in the line of duty*. Tex. Loc. Gov't Code Ann. § 143.073(c) (emphasis added). Defendant tries to cast this as more as more like the FMLA by referring to those protected under § 143.073(c) as "civil service employees." ECF. No. 60 at 11. Yet, it is clear the relevant state and federal laws were enacted for different groups and for different reasons. The FMLA regulations also anticipate that FMLA leave, which is generally unpaid, may in some circumstances be used to supplement workers' compensation leave. *See* 29 C.F.R. § 207(e) (noting how FMLA leave may be substituted for accrued paid leave and used to supplement workers' compensation benefits, such as in cases where the workers' compensation only provides an employee two-thirds of their salary).

Defendant has also not shown that the CSA is more generous than the FMLA in its notice requirements or in its remedies. *Compare* 29 U.S.C. § 2617 (entitling an eligible employee to lost wages with interest, lost employment benefits, and appropriate equitable relief such as promotion), *with* Tex. Lab. Code Ann. § 451.002 (entitling an eligible employee only to reinstatement and "reasonable damages"). It is true that the relevant section of the CSA provides up to a year of fully paid leave of absence rather than 12 weeks. However, it is unclear from Defendant's motion why the length of leave and whether it is paid or unpaid should be dispositive as to whether the CSA is more generous than the FMLA. Plaintiff's argument that Defendant violated the FMLA is specifically that Defendant allegedly failed to provide the required notice of his rights for the purpose of interfering with those rights. ECF No. 60 at 11. Hence, Defendant's cited provisions of the state law being more generous by granting longer, fully paid leave are not especially relevant. It is equally unclear as to whether portions of the CSA and the TWCA can be amalgamated together to become greater than or more generous than the FMLA to support Defendant's preemption argument.

In sum, the CSA and the TWCA are more generous than the FMLA in some respects but not in others. However, they are not more generous in any relevant manner. And even if the state law is more generous than the FMLA, the appropriate or applicable provisions of the FMLA are *still* not preempted by state law. Instead, the state law only affects how the state and federal laws interact with each other to allow for the greatest level of entitlements permitted by the regulations. The state law does not preempt the FMLA altogether to prevent Plaintiff from pursuing FMLA claims.

*2. FMLA Notice*

To establish a prima facie FMLA interference claim, Plaintiff must show that "he gave proper notice of his intention to take FMLA leave." *Devoss*, 903 F.3d at 490. "When an employee requests FMLA leave, *or* when an employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason, the employer must notify the employee of his eligibility." 29 C.F.R. § 825.300(b)(1) (emphasis added). The employer is "responsible in all circumstances for designating leave as FMLA–qualifying, and for giving notice of the designation to the employee as provided in this section." 29 C.F.R. § 825.300(d)(1).

The Fifth Circuit has held that these individualized notice regulations "are not arbitrary, capricious, or manifestly contrary to the FMLA and are valid." *Downey*, 510 F.3d at 542; *see also Ragsdale*, 535 U.S. at 88 ("According to the Secretary [of Labor], the more comprehensive and individualized notice required by the regulations is necessary to ensure that employees are aware of their rights when they take leave."). "When an employee seeks leave for the first time for a FMLA–qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.302(c). "Employees are not required to designate whether the leave they are taking is FMLA leave or leave under State law, and an employer must comply with the appropriate (applicable) provisions of both." 29 C.F.R. § 825.701(a).

Here, Defendant argues that it protected Plaintiff's rights by not running his FMLA concurrently with the medical leave provided by CSA. ECF No. 65 at 17. Next, Defendant argues that Plaintiff failed to give the required notice. ECF No. 65 at 18. In other words, Defendant argues that even if Plaintiff were entitled to FMLA leave, Defendant did not interfere with his FMLA rights by not providing him with individualized notice of his FMLA rights. This is because he never gave notice that he intended to exercise those rights. ECF No. 65 at 17.

34

Defendant cites *Acker v. GM, L.L.C.*, 853 F.3d 784, 788–89 (5th Cir. 2017) to support its

argument that an employee must give notice. ECF No. 65 at 18. Defendant directly quotes *Acker*

as saying an "employee must give employer notice of his intention to take [FMLA leave] in order

to be entitled to it, even when the need for leave is unforeseeable." *Id.* This is a misquotation. The

latter half of the sentence above comes from a *different* paragraph that states, "[e]ven when an

employee's need for leave is unforeseeable, the regulations make clear the employee's duty to

comply with the employer's policy." *Acker*, 853 F.3d at 789 (citing 29 C.F.R. § 825.303(c)). The

cited regulation provides instances where an employee's notice might be delayed, or advance

notice may not be required:

> When the need for leave is not foreseeable, an employee must comply with the
> employer's usual and customary notice and procedural requirements for requesting
> leave, absent unusual circumstances. For example, an employer may require
> employees to call a designated number or a specific individual to request leave.
> However, if an employee requires emergency medical treatment, he or she would
> not be required to follow the call-in procedure until his or her condition is stabilized
> and he or she has access to, and is able to use, a phone. Similarly, in the case of an
> emergency requiring leave because of a FMLA–qualifying reason, written advance
> notice pursuant to an employer's internal rules and procedures may not be required
> when FMLA leave is involved.

Here, Defendant's confused citation to the FMLA "foreseeability" standards is largely

irrelevant for two reasons. First, the record suggests that Plaintiff *did* request leave in some manner.

In his Second Amended Complaint, Plaintiff alleges that he requested medical care, instituted a

worker's compensation claim on May 15, 2017, and took medical leave for various treatments.

ECF No. 60 at 5. Defendant acknowledges that Plaintiff complained of hearing loss and other

medical problems and was immediately placed on leave on the same date. ECF No. 65 at 6.

Plaintiff did not need to mention the FMLA at the time. Thus, because Plaintiff requested leave

and Defendant had knowledge that it was for a FMLA-qualifying reason, Defendant was on

constructive notice. Second, Defendant has not shown that Plaintiff failed to comply with Defendant's own customary notice and procedural requirements for requesting leave. *See, e.g., Acker*, 853 F.3d at 789 (where the plaintiff failed to comply with his employer's procedure when he failed to call in 30 minutes before his shift began prior to his absence).

Finally, Defendant argues that Plaintiff was given notice of his FMLA rights by being given an employee handbook that all employees were responsible for reading. ECF No. 72 at 17. This argument fails because it fails to distinguish the proper notice requirements as set forth in 29 C.F.R. § 825.304(a) with the individualized eligibility notice required by § 825.300(b)(1) and held by the Fifth Circuit as valid and enforceable. Furthermore, Defendant appears to concede that it had knowledge that Plaintiff's leave was for a FMLA-qualifying reason. This is because Defendant argues that it could have placed Plaintiff on FMLA leave and protected Plaintiff's FMLA leave by not running it concurrently with his CSA leave. ECF No. 65 at 18.

Because Defendant had knowledge that Plaintiff's leave was for a FMLA-qualifying reason, Defendant was required to give individualized notice of his eligibility. Thus, Plaintiff's lack of notice of his intention to take FMLA leave does not defeat his FMLA claim.

### 3. Whether Plaintiff Was Qualified for FMLA Leave

Eligible employees under the FMLA are entitled to take leave "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines the term "serious health condition" as an "illness, injury, impairment, or physical or mental condition" that involves "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). A serious health condition involving continuing treatment by a health care provider involves both "incapacity" of "more than three consecutive, full calendar

days," and "any subsequent treatment or period of incapacity relating to the same condition." 29

C.F.R. § 825.115(a). "Incapacity" is defined as an "inability to work, attend school or perform

other regular daily activities due to the serious health condition, treatment therefore, or recovery

therefrom." 29 C.F.R. § 113(b). Subsequent treatment must involve:

> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a). Here, Defendant argues that Plaintiff failed to present evidence that he

was qualified to seek FMLA leave by failing to show he had a serious health condition which

prevented him from going to work. ECF No. 72 at 18. The Court is unpersuaded by this argument

for two reasons. First, the Court notes that this is inconsistent with Defendant's earlier argument

when it reasoned that it protected Plaintiff's FMLA rights by not running them concurrently with

his CSA leave. *Supra* at 33. This is because Defendant could not have run Plaintiff's FMLA leave

concurrent with his CSA leave if he were not qualified to seek FMLA leave.

Second, Plaintiff's injury qualifies as a serious health condition, of which the Defendant

had knowledge. Plaintiff reported to his supervisors that he was having trouble hearing and could

not sleep. ECF No. 60 at 5. He was driven to a hospital by one of his supervisors for treatment. *Id.*

Plaintiff was and continues to be treated for his injuries. *Id.* Defendant acknowledges that Plaintiff

complained of hearing loss and other medical problems and that it his physician did not release

him to return to light-duty work until six months later. ECF No. 65 at 6.

Defendant cites to *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 582 (5th Cir. 2006) in support of its argument that an employer is not accountable unless an employee provides his employer with information needed to process potentially qualifying leave. ECF No. 72 at 19. On this issue, this case only affirms what is stated in 29 U.S.C. § 2613 — that an employer may require that an employee's leave request be supported by a certification from the employee's health care provider. The statute does not say that an employee's leave request *must* be supported by a certification of his health care provider absent of an employer having this requirement. Defendant has also not shown that it did require more information from Plaintiff or that Plaintiff refused to comply with these requirements.

The Court therefore FINDS that Plaintiff has made a *prima facie* showing of being qualified for FMLA leave. Subsequently, Defendant's lack of providing Plaintiff notice of his FMLA rights constitutes interference with his FMLA rights.

### 4. No Relief unless Prejudiced by the Violation

Finally, even if Plaintiff can prove interference, restraint, or denial of the exercise of FMLA rights, there can be no relief unless the employee has been prejudiced by the violation. *See Ragsdale*, 535 U.S. at 89 ("[29 U.S.C.] § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost by reason of the violation, for other monetary losses sustained as a direct result of the violation, and for appropriate equitable relief, including employment, reinstatement, and promotion." (cleaned up)). "FMLA's remedial scheme requires an employee to prove prejudice as a result of the employer's lapse; the employee may not expand the statute's coverage as a penalty for an employer's technical compliance shortcoming." *Lubke v. City of Arlington*, 455 F.3d 489, 497 (5th Cir. 2006).

The Fifth Circuit has examined this issue several times, and in each case its ruling turned on whether the FMLA interference somehow caused an employee's termination. In *Lubke*, the plaintiff's jury verdict was affirmed because the lack of notice led to a lack of medical certification and the loss of a job. *Id.* at 498. In *Downey*, the plaintiff "proved that she was actually prejudiced by her employer's noncompliance with the regulations: had she received individualized notice, she would have been able to postpone her surgery . . . and her position . . . would not have been jeopardized." 510 F.3d at 541.

However, in *Bernard*, the Fifth Circuit reasoned that "the lack of individualized notice had nothing to do with [the plaintiff] not taking leave or losing her job." 630 Fed. Appx. at 243. The Fifth Circuit observed that the plaintiff was aware of her employer's more generous leave program and had participated in it and that she returned to work before exhausting her leave under the program despite knowing she could have taken more partially paid time off. *Id.* The Fifth Circuit concluded that nothing suggested that the plaintiff would have taken additional leave if she had known that she had a right to medical leave under the FMLA and that she therefore was not prejudiced by her employer's lack of notice. *Id.* And in *Hart v. Comcast of Houston, LLC*, 347 Fed. Appx. 978, 980 (5th Cir. 2009), the Fifth Circuit held that the plaintiff was not harmed by any lack of notice. This is because the evidence showed that the employee was allowed his requested leave and to return to the same position with the same pay and was fired for failing to return to work.

Here, Plaintiff alleged in his Second Amended Complaint that Defendant's conduct justified an award for back pay, front pay, interest, special damages, and all other remedies available at law and equity. ECF No. 60 at 11. However, he stated in his response to Defendant's Motion for Summary Judgment that he is "merely seeking injunctive relief against the Defendant

to ensure that Defendant complies with these requirements in the future." ECF No. 69 at 29. In either case, Plaintiff must show that he was prejudiced by Defendant's lack of individualized notice of his FMLA rights. Defendant argues in response that Plaintiff has not pled or demonstrated any prejudice, nor shown that he was harmed by not being placed on FMLA leave running concurrently with his leave under state law. ECF No. 65 at 20.

Plaintiff does briefly address this question in noting that FMLA regulations include the right to decline light-duty assignments and remain on unpaid FMLA leave when used to supplement workers' compensation. ECF No. 69 at 28 (citing 29 C.F.R. § 825.207(e)). In other words, had Plaintiff been given notice of his FMLA rights, he might have used them to decline his return to light-duty. However, Plaintiff makes no showing that he *would* have declined his light-duty assignment and chosen to remain on unpaid leave. And even if he would have, the record suggests that his return to light-duty had nothing to do with his termination. Plaintiff returned to light-duty on November 13, 2017, and was not terminated until over two weeks later — after being placed on leave a second time and being given a full release back to work. *See* ECF Nos. 60 at 6, 69 at 21. Nothing in the record suggests that he had returned to light-duty with a lower position or a lower pay. It is true that two of the alleged incidents of insubordination which Defendant cites as the ultimate reason for his termination occurred while he was still on light-duty. However, there is no indication that the "packet incident" would not have inevitably occurred on a later date. The documents were "a random collection of various policies and procedures which had nothing to do with light duty." ECF No. 60 at 15.

Because Plaintiff has failed to show that he was prejudiced by Defendant's lack of notice, the Court therefore FINDS that his claim of FMLA interference fails. Accordingly, Defendant's Motion for Summary Judgement is GRANTED with respect to Plaintiff's claims under the FMLA.

**IV. CONCLUSION**

For the foregoing reasons, the Court concludes that Defendant is entitled to summary judgment on all of Plaintiff's claims in his Second Amended Complaint. It is therefore ORDERED that Defendant's Motion for Summary Judgment (ECF No. 65) is GRANTED in its entirety and with respect to all of the aforementioned claims.

**SO ORDERED.**

July 2**2**, 2020.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

41